

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

| | |
|---|---|
| LRO | *271 Cadman Plaza East* |
| F.#2018R02113 | *Brooklyn, New York 11201* |

December 17, 2021

By E-mail and ECF

The Honorable LaShann DeArcy Hall
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Peter Tuccio
                 Criminal Docket No. 18-610 (LDH)

Dear Judge DeArcy Hall:

      The government respectfully submits this letter in advance of defendant Peter Tuccio's sentencing, scheduled for March 2, 2022 at 2:00 p.m. For the following reasons, the government respectfully submits that a sentence of 10 years' imprisonment, the mandatory term provided by 18 U.S.C. § 844(h), is appropriate.

I.      Background

      On January 13, 2021, the defendant pled guilty to Count Eleven of the above-captioned indictment, charging that the defendant used fire to commit one or more felonies, namely, extortion and extortion conspiracy, as charged in Counts Nine and Ten. (Presentence Investigation Report ("PSR") ¶ 1). In his plea agreement, the defendant acknowledged that "(1) in or about and between 2014 and 2015, he, together with others, did knowingly and intentionally conspire to use extortionate means to collect one or more extensions of credit from the individual referred to as John Doe 2 in the Indictment, as charged in Count Three of the Indictment; (2) on or about August 15, 2015, he, together with others, did knowingly, intentionally and maliciously damage and destroy, by means of fire and an explosive, a vehicle used in interstate and foreign commerce and in an activity affecting interstate and foreign commerce and conspired to do so, as charged in Counts Four and Five of the Indictment; (3) in or about and between November 2015 and June 2016, he, together with others, did knowingly and intentionally make one or more extortionate extensions of credit to the individual referred to as John Doe 3 in the Indictment, as charged in Count Six of the Indictment; (4) on or about December 4, 2015, he, together with others, did knowingly, intentionally and maliciously damage and destroy, by means of fire and an explosive, a vehicle used in interstate and foreign commerce and in an activity affecting

interstate and foreign commerce and conspired to do so, as charged in Counts Seven and Eight of the Indictment; and (5) in or about December 2015, he, together with others, did knowingly and intentionally commit and threaten physical violence to the individual referred to as John Doe 4 in the Indictment and to property, in furtherance of a plan and purpose to obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, in that the defendant and others obtained property, to wit: proceeds from a pizzeria in Queens, New York from John Doe 4, with his consent, which consent was induced by wrongful use of actual and threatened force, and conspired to do so, as charged in Counts Nine and Ten of the Indictment." The facts of those crimes are set forth below.

    A.  Extortionate Collection of Credit Conspiracy – John Doe 2

From 2014 to 2015, the individual referred to as John Doe 2 in the Indictment received loans from a member of the Bonanno Organized Crime Family totaling between $6,000 and $7,000. John Doe 2 paid $100 per week in interest for more than two years without reducing the principal amount borrowed on the loan. PSR ¶ 7.

Eventually, John Doe 2 fell behind on payments. At the behest of the Bonanno Organized Crime Family member, in 2015, the defendant used violence to collect the debt. Early one morning, when John Doe 2 was sleeping in a cab, the defendant beat him with a pipe. During the attack, the defendant demanded that John Doe 2 make his payments. As a result of the assault, John Doe 2 suffered bruising and two black eyes. PSR ¶ 7.

    B.  August 15, 2015 Arson

On August 15, 2015, the defendant, acting on behalf of a member of the Luchese Organized Crime Family, set fire to a Chevrolet Suburban in the Howard Beach section of Queens. The Suburban was owned by an individual who was in the midst of a union dispute with the member of the Luchese Organized Crime Family. As a result of the arson, the owner of the vehicle sustained $500 in damage. PSR ¶ 8.

    C.  Extortionate Extension of Credit – John Doe 3

In November 2015, John Doe 3 asked Gino Gabrielli about obtaining a loan to pay his mortgage. Gabrielli, in turn, introduced John Doe 3 to the defendant, who provided the loan. The defendant informed John Doe 3 of the terms of the loan: John Doe 3 would have to pay the defendant $120 per week in interest in order to repay the $3,000 loan. John Doe 3 understood that, if he did not repay the loan, he would face consequences, including violence. The defendant collected weekly payments from John Doe 3 until the loan was repaid in full. PSR ¶ 9.

    D.  December 4, 2015 Arson & Extortion – John Doe 4

On December 3, 2015, an individual referred to in the indictment as John Doe 4 went to a smoke shop in Queens, New York. While inside the smoke shop, John Doe 4 noticed three young men. The men were the defendant, Jonathan Gurino and Gino Gabrielli. PSR ¶ 11. The defendant noticed John Doe 4 as well; he recognized John Doe 4 to be someone who has

refused to pay protection money to a Captain in the Gambino Organized Crime Family ("Co-Conspirator-1"). The defendant instructed Gurino to exit the smoke shop and see if John Doe 4 was driving a white Mercedes Benz, which he did.

After John Doe 4 left the smoke shop, the defendant, Gurino and Gabrielli followed John Doe 4. John Doe 4 noticed that the men were following him and, scared, attempted to evade them by driving quickly and running a stoplight. The defendant, however, continued to follow John Doe 4. John Doe 4 drove by his house, but he did not stop, believing that he did not have enough time to get inside safely. John Doe 4 continued speeding through the streets and running stop signs and stoplights in an attempt to get away, but he was unable to lose the defendant, Gurino and Gabrielli. Eventually, John Doe 4 parked his car and ran towards a pizzeria. PSR ¶ 12.

Following closely, the defendant, Gurino and Gabrielli arrived at the pizzeria shortly thereafter. The defendant asked John Doe 4 "how's [Co-Conspirator-1]?" John Doe 4 feigned ignorance and responded "[Co-Conspirator-1] who?" Notwithstanding this response, John Doe 4 understood that Co-Conspirator-1 was a member of the Gambino Organized Crime Family, who had been extorting him of hundreds of dollars per year for many years, but whom he had not yet paid in 2015. The defendant also made a reference to John Doe 4's car – a white 2014 Mercedes Benz. Scared, John Doe 4 ran inside the pizzeria. After a while, Gurino entered the pizzeria, approached John Doe 4, and asked him to come outside. John Doe 4 refused. Eventually, the defendant, Gurino and Gabrielli left the pizzeria and John Doe 4 drove home. PSR ¶ 13.

Later that night, the defendant, Gurino and Gabrielli drove to John Doe 4's house where, at the defendant's behest, Gabrielli lit John Doe 4's car on fire. John Doe 4 awoke to a loud boom and discovered that his car was on fire. Security video captured Gabrielli approaching John Doe 4's Mercedes Benz, which was parked in front of John Doe 4's house, Gabrielli pouring a liquid over the Mercedes, the Mercedes then erupting in flames, and Gabrielli, whose right lower leg by then was also engulfed in flames, running away from the Mercedes. The defendant and Gurino drove Gabrielli to a hospital where he was treated for the burns to his leg. PSR ¶ 14.

Following the fire, the Mercedes was declared by an insurance company to be "totaled." See Ex. A (pictures depicting the burned vehicle). After the arson, John Doe 4 paid Co-Conspirator-1 more than $5,000. PSR ¶ 15.

II.   Statutory and Guideline Provisions

Pursuant to 18 U.S.C. § 844(h), the mandatory term of imprisonment is 10 years. PSR ¶ 56. Similarly, under the United States Sentences Guidelines (the "Guidelines" or "U.S.S.G.") § 2K2.4(a), the guideline term of imprisonment is 10 years.

III.  Legal Standard

In the Supreme Court's opinion in United States v. Booker, 125 S. Ct. 738, 743 (2005), which held that the Guidelines are advisory rather than mandatory, the Court made clear that district courts are still "require[d] . . . to consider Guidelines ranges" in determining a sentence, but also may tailor the sentence in light of other statutory concerns. See 18 U.S.C. § 3553(a). Subsequent to Booker, the Second Circuit held that "sentencing judges remain under a duty with

respect to the Guidelines . . . to 'consider' them, along with the other factors listed in section 3553(a)." United States v. Crosby, 397 F.3d 103, 111 (2d Cir. 2005).

In Gall v. United States, 552 U.S. 38 (2007), the Supreme Court elucidated the proper procedure and order of consideration for sentencing courts to follow: "[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." Id. at 49 (citation omitted). Next, a sentencing court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, [the district court] may not presume that the Guidelines range is reasonable. [It] must make an individualized assessment based on the facts presented." Id. at 50 (citation and footnote omitted).

"[I]n the ordinary case, the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'" Kimbrough v. United States, 552 U.S. 85, 109 (2007); see also United States v. Fernandez, 443 F.3d 19, 27 (2d Cir. 2006) ("[I]n the overwhelming majority of cases, a Guidelines sentence will fall comfortably within the broad range of sentences that would be reasonable in the particular circumstances."). Indeed, the Supreme Court has held that, on appeal, a Guidelines sentence may be presumed to be reasonable because "the sentencing statutes envision both the sentencing judge and the [Sentencing] Commission as carrying out the same basic § 3553(a) objectives." Rita v. United States, 551 U.S. 338, 358 (2007). "An individual judge who imposes a sentence within the range recommended by the Guidelines thus makes a decision that is fully consistent with the Commission's judgment in general." Id. at 350. Furthermore, Guidelines sentences promote Congress' goal in enacting the Sentencing Reform Act – "to diminish unwarranted sentencing disparity." Id. at 354.

The Supreme Court has recognized that "it is uncontroversial that a major departure should be supported by a more significant justification than a minor one." Gall, 552 U.S. at 50. If the court decides to impose a non-Guidelines sentence, the court "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." Id.

IV. Argument

Section 3553(a) requires a court to consider a number of factors in imposing sentence, including the nature and circumstances of the offense and the history and characteristics of the defendant (§ 3553(a)(1)); the need for the sentence to reflect the seriousness of the violation, to promote respect for the law, and to provide a just punishment for the violation (§ 3553(a)(2)(A)); and the need for the sentence to afford adequate deterrence to criminal conduct (§ 3553(a)(2)(B)), and to protect the public from further crimes or violations of the defendant (§ 3553(a)(2)(C)). For the reasons discussed in more detail below, the statutory sentence of 10 years is sufficient, but not greater than necessary, to meet the goals set forth in 18 U.S.C. § 3553(a).

There is no question that the offenses to which the defendant pleaded guilty and stipulated are extremely serious in nature. See United States v. Santa, 1986 WL 6832, at *2 (E.D.N.Y. May 6, 1986) (noting that extortion is "a very serious offense"); United States v.

Bannister, 786 F. Supp. 2d 617, 669 (E.D.N.Y. 2011) (noting that "[t]hose who engage in violence and extortion should be punished in accordance with the danger their actions represent to the community."); United States v. Vega, 2008 WL 2323371, at *3 (E.D.N.Y. June 2, 2008) (noting arson is a serious crime, especially when committed in conjunction with other crimes); United States v. Vrancea, 136 F. Supp. 3d 378, 391 (E.D.N.Y. Sept. 29, 2015) (noting that arson "is an incredibly serious" crime); United States v. Scala, 405 F. Supp. 2d 450, 452 (S.D.N.Y. 2005) (observing that extortion and extortion conspiracy are serious crimes).

The defendant participated in multiple extortion schemes and has threatened, and engaged in, physical violence in order to ensure his victims' compliance. As detailed above, the defendant has participated in two arsons: In August 2015, he set fire to a vehicle at the behest of a member of the Luchese Organized Crime Family, and just four months later, in December 2015, the defendant and his coconspirators set fire to John Doe 4's car solely to assist a member of the Gambino Organized Crime Family. The defendant has also engaged in physical violence, beating John Doe 2 with a pipe after John Doe 2 fell behind on payments to a loan from a member of the Bonanno Organized Crime Family. And the defendant has threatened and terrorized his victims, including by chasing John Doe 4 through the streets of Howard Beach before confronting him at a pizzeria. Offenses of this nature warrant serious punishment.

The defendant's history and characteristics also counsel in favor of a sentence of 10 years' imprisonment. Unlike many defendants sentenced in this District, the defendant grew up in an environment of relative affluence with the benefit of a supportive family. The defendant enjoyed an "uneventful and happy childhood free from abuse." PSR ¶ 42. He continues to share "a very close relationship with his family," all of whom "remain supportive of him." Id. He resides with his parents and grandfather in a three-bedroom home, complete with a gym and inground pool. PSR ¶ 43. The defendant received his high school diploma from Saint Francis Preparatory School in Queens, New York, PSR ¶ 51, and he is financially supported by his parents, PSR ¶ 52.

Unlike those defendants who engage in crime out of desperation, this defendant faced no comparable challenges. He enjoyed close family relationships, a formal education, and a support structure that many defendants lack. Taken together with his background, his actions demonstrate a profound disrespect for the law. The defendant's education and family background show that he had the tools to earn money legitimately and the judgment to distinguish right from wrong. Instead of pursuing a productive or legitimate path, though, the defendant engaged in an array of criminal activity including extortion, arson, and other acts of violence.

Finally, the prescribed statutory sentence would provide a significant deterrent effect, both to the defendant and others who would commit similar crimes. A sentence of 10 years will provide general deterrence by sending a clear message to members and prospective members of organized crime that serious criminal activity will not go unpunished.

IV.     Conclusion

   For the foregoing reasons, the government respectfully requests that the Court sentence the defendant to the mandatory term of incarceration of 10 years.

Respectfully submitted,

BREON PEACE
United States Attorney

By:     /s/
Nicholas Moscow
Lindsey R. Oken
Assistant U.S. Attorney
(718) 254-6516

cc:     Clerk of Court (LDH) (by ECF)
   James Kousouros, Esq. (by ECF)